UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN B. HEARN,

                Plaintiff,

      - against -

UNITED STATES OF AMERICA, UNITED STATES
DEPARTMENT OF TRANSPORTATION, UNITED
STATES MERCHANT MARINE ACADEMY,
MICHAEL STROUD, JAMES A. HELIS
and JOHN DOES 1-10,

                Defendants.
----------------------------------------------------------------X

**COMPLAINT**

The plaintiff, John B. Hearn ("Hearn" or "Plaintiff"), by his attorneys, Hogan & Cassell, LLP, as and for his Complaint against the defendants, United States of America, United States Department of Transportation, United States Merchant Marine Academy, James A. Helis, individually and as Superintendent of the United States Merchant Marine Academy, Michael Stroud, individually and as an officer of the Merchant Marine Academy and John Does 1-10 (collectively "Defendants"), alleges the following:

## SUMMARY OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief based upon Defendants' conduct resulting in the expulsion/disenrollment of Plaintiff from the Academy in violation of the Academy's own rules and procedures and the Due Process clause of the Fifth Amendment.

## JURISDICTION AND VENUE

2. This action arises under Bivens v. Six Unknown Federal Bureau of Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971), the Administrative Procedures Act, 5 U.S.C. § 701,

et seq. and the Due Process Clause of the Fifth Amendment.

3. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201.

4. Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred in the Eastern District of New York.

5. This is not an action that seeks to recover for any claims for negligence or any claims that could be covered by the Tort Claims Act. Thus, Plaintiff is not required to serve a Notice of Claim.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action on each and every one of his claims for which he is entitled to a jury.

## THE PARTIES

7. Plaintiff is an individual who resides in Delaware.

8. At all times set forth herein, upon information and belief, the defendant United States Department of Transportation is an agency of the United States of America, located at the West Building, 1200 New Jersey Avenue, SE, Washington, D.C. Upon information and belief, the United States Department of Transportation operates, funds and/or maintains the United States Merchant Marine Academy, located at Kings Point, New York.

9. At all times set forth herein, upon information and belief, the defendant United States Merchant Marine Academy (the "Academy"), is an educational institution that is an instrumentality of the federal government charged with the responsibility of training the officers of the United States Merchant Marine, located at 300 Steamboat Road, Kings Park, New York. The Academy is owned, operated and/or maintained by the United States Department of

Transportation.

10. Upon information and belief, the defendant Michael Stroud ("Stroud") is the current Commandant of the Academy.

11. At all times set forth herein, upon information and belief, the defendant James A. Helis ("Helis") is the Superintendent of the Academy.

12. Defendants John Does 1-10 are agents, employees and/or officers of the United States Department of Transportation and/or the Academy.

## FACTUAL BACKGROUND

13. In July, 2014, Hearn entered the Academy, Class of 2018.

14. In the summer of 2015, Hearn failed two classes in the third trimester and attended summer school for remedial academic work.

15. In the summer of 2015, Hearn received the O'Gara Award for the Class of 2018, which recognizes those who have raised their grade point average the most over the previous year.

16. In December 2015, Hearn served as a "cadet" on the M/V Maersk Kentucky.

17. In what can only be described as a gross over-reaction, on December 18, 2015, Hearn was ordered to return to the Academy based on a questionable alcohol incident not aboard the Maersk Kentucky, while the ship was located in Holland.

18. As a result, Plaintiff lost extensive time at sea, which is essential for completing his sea projects. Pursuant to the Academy's policy, a midshipman is afforded fourteen days at sea for each credit.

19. Statements from the Captain and another officer confirm the veracity of Hearn's claims that he did not engage in any improper conduct regarding the events that occurred on or

about December 18, 2015, while he was in Holland.

20. Hearn was thereafter recalled to the Academy and restricted to the grounds, even though the facilities were closed.

21. Although Plaintiff did nothing wrong, he was charged with a Class 1 Violation of the Academy's Regulations. Other than this charge, Plaintiff had no other disciplinary deficiencies or demerits while at the Academy.

22. The decision to charge Hearn with a Class 1 Violation for his conduct relating to the Maersk Kentucky was not founded and inconsistent with the treatment of other midshipman in similar circumstances.

23. As a result of the Class 1 charge, Plaintiff was restricted to the grounds of closed facilities and was denied food, a berthing assignment and fresh linens.

24. On December 22, 2015, Commander Frangos, who was the investigating officer for the Class 1 Violation charge, collected and reviewed evidence and concluded that Hearn and his sea partner were exonerated of all charges.

25. On the same day, however, Captain Sosa denied the investigator's recommendation and re-charged Hearn with a Class 1 Violation.

26. Though Hearn submitted an appeal of the Class 1 Violation without even receiving written charges, the Commandant then denied Hearn's appeal on the ground that "it's not within the time window of 24-hour notice".

27. Notably, according to the Academy's regulations, the 24-hour notice deadline to appeal applies to a Class 2 Violation and not a Class 1 Violation.

28. As a result of the alleged incident pertaining to the Maersk Kentucky, Plaintiff suffered additional discipline and punishment, such as being restricted to Academy grounds and

about December 18, 2015, while he was in Holland.

20. Hearn was thereafter recalled to the Academy and restricted to the grounds, even though the facilities were closed.

21. Although Plaintiff did nothing wrong, he was charged with a Class 1 Violation of the Academy's Regulations. Other than this charge, Plaintiff had no other disciplinary deficiencies or demerits while at the Academy.

22. The decision to charge Hearn with a Class 1 Violation for his conduct relating to the Maersk Kentucky was not founded and inconsistent with the treatment of other midshipman in similar circumstances.

23. As a result of the Class 1 charge, Plaintiff was restricted to the grounds of closed facilities and was denied food, a berthing assignment and fresh linens.

24. On December 22, 2015, Commander Frangos, who was the investigating officer for the Class 1 Violation charge, collected and reviewed evidence and concluded that Hearn and his sea partner were exonerated of all charges.

25. On the same day, however, Captain Sosa denied the investigator's recommendation and re-charged Hearn with a Class 1 Violation.

26. Though Hearn submitted an appeal of the Class 1 Violation without even receiving written charges, the Commandant then denied Hearn's appeal on the ground that "it's not within the time window of 24-hour notice".

27. Notably, according to the Academy's regulations, the 24-hour notice deadline to appeal applies to a Class 2 Violation and not a Class 1 Violation.

28. As a result of the alleged incident pertaining to the Maersk Kentucky, Plaintiff suffered additional discipline and punishment, such as being restricted to Academy grounds and

being required to complete an alcohol remediation program. He was also disciplined with early musters and extra details.

29. As a result of the alleged Maersk Kentucky incident, certain staff at the Academy exhibited animus towards Plaintiff.

30. For example, CAPT Albert and CAPT Treacy, while deleting the names and using another port, described the "incident" to other students in shipping out seminars. The matter brought immediate polarization and embarrassment and labeled Plaintiff as a poor cadet.

31. Plaintiff became known as "the Rotterdam kid" because the actual story was discussed in public.

32. CAPT Albert denied Plaintiff's request to defer at least one sea project until the second sailing period, which would have reduced the academic burden of completing 7 sea projects in the shrinking period of time scheduled for sea duty training.

33. On January 31, 2016, the day Plaintiff was scheduled to return to sea, his grandfather and namesake, Jack Hearn Sr., passed away.

34. After a discussion with his family, and in an attempt to keep up with his class and get the remedial sea days accomplished, Plaintiff departed from the Academy and joined the Marjorie C in Hawaii.

35. Plaintiff was only allocated 36 sea days before he had to return to the Academy for the third trimester.

36. Plaintiff was only provided with the 36 sea days to complete seven projects. The normal amount of sailing days for seven projects would be more than 3 months.

37. Through extensive efforts, Plaintiff was able to complete all 7 projects. Plaintiff failed two of the projects, however, creating an academic deficiency.

5

38. At the same time, Plaintiff remained restricted due to the Class 1 Violation and was subject to restriction on the grounds, extra duty, marching tours and weekend musters.

39. When Plaintiff rejoined the regiment, he was exhausted due to the volume of work (i.e. having only 36 days in which to complete the sea projects) and the effects of the passing of his grandfather.

40. Due to the exhaustion, death of his grandfather and restrictions placed upon him, Plaintiff started the academic trimester with difficulty and failed a Navigation Law test. Plaintiff was unable to recover from the first test failure and failed the class.

41. Plaintiff was placed on Academic Probation for the failure of the two sea projects and the Navigation Law class.

42. The Academy recommended that Plaintiff take a "setback" to the Class of 2019 to recover.

43. During his setback, Plaintiff completed 12 college credits at a local college. He attended the college until December 2016.

44. Assistant Dean Taha scheduled Plaintiff to return during the sea year training period in December 2016, with the understanding that Plaintiff would be assigned two or more months at sea to remediate two sea projects.

45. On December 15, 2016, Plaintiff returned to the Academy and reported daily to Shipboard Training in order to obtain an assignment to remediate his sea projects. Shipboard Training coordinates the process of a midshipman sailing on a vessel.

46. Plaintiff was not provided with an assignment and he went home for Christmas break.

47. Plaintiff returned on January 3, 2017, but once again was not immediately placed on a ship, even though he reported daily to Shipboard Training for an assignment.

48. Upon information and belief, there was a lack of ships due to the sea year "stand down" and lack of billets (sea assignments) available.

49. On February 8, 2017, Plaintiff's grandmother passed away. He was granted an emergency leave and returned home, while awaiting a ship assignment.

50. On February 23, 2017, Plaintiff received orders to attend the T/S Kings Pointer voyage for a 1-week sea duty.

51. Significantly, on March 8, 2017, Plaintiff received an email from Virginia Reilly, Midshipman Personnel Office, confirming that he had passed his sea year projects and satisfied the terms of probation.

52. Plaintiff was not given remedial sea training until the period of March 4-11, 2017 on the T/S Kings Pointer.

53. Plaintiff was not provided with normal orders for this critical and remedial assignment. He was told to complete his Navigation Law project during the one week ship assignment. The Academy of Shipboard Training Sea Year Guide, in Appendix 6 - Listing of Sea Projects, provides 14 days for each credit per sea project.

54. The Navigation Law project consisted of three parts. Part A required Plaintiff to copy, by hand, the entire COLREGS, which is the Navigation Rules of the Road. Part B consisted of questions and drawings. Part C was a test issued upon Plaintiff's return to the Academy to prove that he has studied the material.

55. Upon information and belief, Plaintiff's first assignment of Part A in 2016 was worth 10% of the entire grade. It was Hearn's understanding that he was assigned a remedial

7

assignment of which Part A was 10% of the grade. It was later discovered that this grade value was changed in 2017 to 20% of the grade.

56. When Plaintiff returned to the Academy, he realized that Part A was missing. He did not know if it has been stolen or misplaced in the confusion of returning to the Academy immediately after helping with his grandmother's funeral services. Plaintiff did not have time to re-write the project because his sea duty was assigned at the very last minute and at the end of the sea training period when assignments were due.

57. Plaintiff finalized Part B and submitted it on March 13, 2017. Plaintiff also completed Part C.

58. Upon information and belief, Plaintiff passed both Parts B and C and even without Part A, would have completed the project. Plaintiff, however, was not provided with a grade for the project.

59. Plaintiff estimates that his total GPA is about 2.7, which is far above the required GPA of 2.0.

60. On May 10, 2017, Plaintiff was notified that the Academic Review Board (the "ARB") and the Dean recommended Plaintiff's dismissal because he allegedly failed his sea year project.

61. Even though the Academic Policies Handbook specifically states that a midshipman is to be provided with notice of a review by the ARB and the opportunity to submit a statement explaining the reason(s) for the academic deficiency, Plaintiff was not afforded guidance, an Academic Advisor or the opportunity to submit a statement.

62. Notably, when Plaintiff requested that Navigation Law Instructor, Captain Hall, review the academic deficiency, Captain Hall could not locate Plaintiff's project and did not

8

provide any specific grade for the project.

63. The Academy's policies provide that midshipmen are to have access to graded materials and that materials from courses must be retained for at least three academic terms to permit a midshipman to review the material.

64. Plaintiff scheduled a hearing with Superintendent Helis to appeal the ARB's recommendation.

65. During the hearing with Superintendent Helis on May 17, 2017, it became clear that a substantial factor in the Superintendent's denial of the appeal was the incident relating to the Maersk Kentucky.

66. Such an issue, however, is a disciplinary issue, which based upon the Academy's own policies and procedures, would be an issue for which Plaintiff would be entitled to a review by an Executive Review Board (an "ERB"). Plaintiff, however, was never afforded a review by an ERB.

67. It is also an issue for which Plaintiff had already been disciplined.

68. Moreover, Superintendent Helis, in denying the appeal, exhibited personal animus towards Plaintiff and was clearly prejudiced against him.

69. For example, Superintendent Helis told Plaintiff that you brought this upon yourself because of the alcohol offense.

70. Superintendent Helis also blamed Plaintiff's academic problems on Plaintiff, stating that due to Plaintiff's alleged drinking, Plaintiff was at fault for not having sufficient sea days to complete the sea projects.

71. Superintendent Helis refused to consider many mitigating circumstances, such as: the death of Plaintiff's grandparents during the sea training period; the short sea period affording

9

only 36 days to complete 7 sea projects that would normally assign approximately 100 sea days; the delay from December 15, 2016 until March 4, 2017 in locating a ship assignment for Plaintiff resulting in a second short sea period affording only 7 sea days that would normally assign, at least, 14 days; and the fact that Captain Hall could not find Plaintiff's project.

72. Though Plaintiff attempted to appeal Superintendent Helis's decision to the Maritime Administration, he was told that he could not do so.

73. Plaintiff has been disenrolled from the Academy and the Academy refused to reconsider its position.

## COUNT I
## RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "73" above as if set forth fully herein at length.

75. Defendants are all agents as defined by 5 U.S.C. § 701, and thus, their actions are subject to review under the Administrative Procedure Act.

76. Defendants' actions are final.

77. There is no adequate remedy at law.

78. Defendants' actions, which resulted in the expulsion/disenrollment of Plaintiff from the Academy, are violative of the Academy's own rules and procedures and the Due Process clause of the Fifth Amendment.

79. Defendants' actions, which resulted in the expulsion/disenrollment of Plaintiff from the Academy, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to Constitutional right (specifically the Due Process clause of the Fifth Amendment); and/or in excess of statutory jurisdiction, authority, or limitations.

80. Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' actions to be unlawful and should set aside Defendants' conduct in expelling/disenrolling Plaintiff.

81. Pursuant to 5 U.S.C. § 706, this Court should hold Defendants' actions to be unlawful and should compel Defendants to reinstate Plaintiff to the Academy.

## COUNT II
## VIOLATION OF THE FIFTH AMENDMENT, PROCEDURAL DUE PROCESS

82. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "81" above as if set forth fully herein at length.

83. Hearn has property and liberty rights in his education, the degree he sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

84. Defendants' action with respect to Hearn's property and liberty rights amounted to a deprivation of such rights in that Defendants improperly expelled/disenrolled Hearn from the Academy.

85. The deprivation occurred without due process as afforded by the Fifth Amendment of the United States Constitution, as Defendants failed to afford Hearn a meaningful opportunity to properly oppose his expulsion.

86. Defendants failed to follow the normal procedures to safeguard the rights of Hearn and treated Plaintiff in a manner that was inconsistent with the manner in which they treated other midshipmen.

87. Defendants failed to comply with their own procedures relating to the timing of any discipline, including, but not limited to, the procedures set forth in the Academic Policies Handbook; the Superintendent's Instruction regarding Deferred Graduates; Midshipman Regulations; and the Honor Manual.

88. Defendants' conduct was also violative of 46 CFR, part 310, including 46 CFR parts 310.8, 310.10, 310.65, 310.67.

89. In addition, Defendants failed to properly advise Plaintiff of the ARB and he was not afforded the opportunity to submit a statement to the ARB.

90. Further, Plaintiff was not provided with a fair hearing inasmuch as at his "hearing" with the Superintendent, the Superintendent improperly mixed disciplinary issues with academic issues.

91. The decision to disenroll Plaintiff was not a careful and deliberate decision and Plaintiff was not afforded with proper notice of the proceedings against him.

92. As a result of Defendants' conduct, Plaintiff is entitled to declaratory and injunctive relief.

## COUNT III
## VIOLATION OF THE FIFTH AMENDMENT, SUBSTANTIVE DUE PROCESS

93. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "92" above as if set forth fully herein at length.

94. Hearn has property and liberty rights in his education, the degree he sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

95. Defendants' actions with respect to Hearn's property and liberty rights amounted to a deprivation of such rights in that Defendants improperly expelled/disenrolled Plaintiff from the Academy.

96. Defendants' decision to disenroll Plaintiff was arbitrary and capricious and did not involve the exercise of professional judgment.

97. Defendants' decision to disenroll Plaintiff was motivated by faith or ill will

unrelated to Plaintiff's academic performance.

98. Defendants' aforementioned conduct violated Hearn's rights and was in violation of the Fifth Amendment of the United States Constitution.

99. Defendants' violations of the Fifth Amendment have injured and will continue to injure Hearn. Hearn is entitled to equitable and injunctive relief, compensatory and punitive damages sustained as a result of Defendants' violations.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

1. Declare the actions of Defendants, their agents, employees, others and successors in interest as illegal and violative of the U.S. Constitution and federal law.

2. Pursuant to 5 U.S.C. § 706, hold Defendants' action to be unlawful and set aside Defendants' conduct in precluding Plaintiffs from graduating.

3. Pursuant to 5 U.S.C. § 706, hold Defendants' action to be unlawful and compel Defendants to reinstate Plaintiff.

4. Grant Plaintiff reinstatement as a Midshipman at the Academy and afford him all rights and benefits that he would have been afforded but for Defendants' improper conduct.

5. Order Defendants to compensate, reimburse and otherwise make Plaintiff whole for compensatory, actual and punitive damages in an amount to be determined at trial.

6. Direct Defendants to pay Plaintiffs all of his costs, expenses and reasonable attorneys' fees.

7.    Grant such other and further relief as is just.

Dated: June 19, 2017

                    Respectfully submitted,

                    HOGAN & CASSELL, LLP

By: _____
     Michael Cassell
     *Attorneys for Plaintiff, John B. Hearn*
     500 North Broadway, Suite 153
     Jericho, New York 11753
     Tel. 516-942-4700
     Fax 516-942-4705
     Email: mcassell@hogancassell.com