FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 31 2020 ★

LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOHN B. HEARN,

                      Plaintiff,

          -against-

UNITED STATES OF AMERICA, UNITED
STATES DEPARTMENT OF
TRANSPORTATION, UNITED STATES
MERCHANT MARINE ACADEMY,
MICHAEL STROUD, JAMES A. HELIS AND
JOHN DOES 1-10

                   Defendants.
-----------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-03703 (ADS)(SIL)

**APPEARANCES:**

**Hogan & Cassell LLP**
*Attorneys for the Plaintiff*
500 North Broadway Suite 153
Jericho, NY 11753
      By:    Michael D. Cassell, Esq., Of Counsel.

**United States Attorneys Office**
**Eastern District of New York**
*Attorneys for the Defendants*
610 Federal Plaza
Central Islip, NY 11722
      By:    Diane C. Leonardo-Beckmann, Esq., Assistant United States Attorney.

**SPATT, District Judge:**

On June 19, 2017, plaintiff John B. Hearn (the "Plaintiff") brought this action against the

United States of America, the United States Department of Transportation, the United States

Merchant Marine Academy (the "Academy"), Commandant Michael Stroud ("Stroud"),

Superintendent James A. Helis ("Helis"), and John Does 1–10 (collectively, the "Defendants")

seeking declaratory, injunctive and equitable relief stemming from his disenrollment from the

1

Academy. The Plaintiff challenges his disenrollment under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the doctrines of procedural and substantive due process under the Fifth Amendment of the United States Constitution.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P." or "Rule") 56. For the following reasons, the Court grants the Defendants' motion, denies the Plaintiff's motion, and grants the Defendants summary judgment dismissing the Complaint with prejudice.

## I. BACKGROUND

The Plaintiff entered the Academy as a student in July 2014 as part of the graduating class of 2018.

In June 2015, the Assistant Academic Dean referred the Plaintiff to the Academy's Academic Review Board ("ARB") for disenrollment after he failed two on-campus courses, Probability and Statistics and Terrestrial Navigation 2. The ARB recommended the Plaintiff be placed on academic probation, which Helis adopted. The Plaintiff accepted the terms of that probation, which provided, in relevant part, that the Plaintiff may be disenrolled if he failed another course.

From November 11, 2015 to December 4, 2015, the Plaintiff was assigned to the M/V CAPE RISE.

From December 4, 2015 to December 18, 2015, the Plaintiff was assigned to the ship MAERSK KENTUCKY. During this assignment, the Plaintiff and a fellow midshipman left the ship and had multiple alcoholic drinks with some shipmates. When the Plaintiff and the fellow midshipman returned to the ship, they were denied entry because they were intoxicated. Following

2

the incident, the Academy recalled the Plaintiff to campus, charged the Plaintiff with a Class 1 violation, and conducted an investigation.

On December 21, 2015, Commander Frangos ("Frangos"), the investigating officer, submitted a report regarding his investigation to then-Commandant Captain Sosa ("Sosa"). The report recommended that the Plaintiff be exonerated from all charges.

On December 22, 2015, Sosa held a hearing finding the Plaintiff guilty, levying the disciplinary sanctions of 100 demerits, 10 weeks of restriction to campus, 40 extra duty hours and alcohol counseling.

On January 5, 2016, the Plaintiff submitted an appeal to Frangos and, on January 7, 2016, submitted another appeal to Lieutenant Boyle.

On January 8, 2016, the Academy informed the Plaintiff that the Commandant disapproved his appeal because he failed to submit it within 24 hours of being found guilty.

From January 26, 2016 to January 29, 2016, the Plaintiff was placed on the T/V KINGS POINTER, the Academy training vessel.

From February 1, 2016 to March 7, 2016, the Plaintiff was assigned to the vessel M/V MARJORIE C.

On March 14, 2016, the Plaintiff turned in his sea projects for the second trimester of his sophomore year.

On March 15, 2016, the Plaintiff began classes for the third trimester of his sophomore year. During this trimester, his only class was the on-campus Navigation Law (NAUT230).

In April 2016, the Plaintiff received the grades from his second trimester classes, which indicated that he failed the on-campus, in-class examination, of Ship Structure and Stability (NPRJ225) and the Navigation Law I (NPRJ235S) sea project. Specifically, the Plaintiff received

3

a grade of 75% for the Ship Structure and Stability (NPRJ225) sea project and a grade of 61% for the in-class examination.

Due to the two failures, the Plaintiff was again referred by the Assistant Academic Dean to the ARB for disenrollment on April 29, 2016.

On May 17, 2016, the ARB recommended continued academic probation and Helis agreed.

During the week of June 11, 2016—prior to finalizing the terms of the Plaintiff's academic probation for his failure of Ship Structure and Stability (NPRJ225) and Navigation Law I (NPRJ235S)—the Plaintiff took the final exam for his on-campus Navigation Law (NAUT230) class. The Plaintiff failed this class as well, resulting in another referral by the Assistant Academic Dean to the ARB for disenrollment.

On July 12, 2016, due to the three academic failures, the ARB recommended that the Plaintiff be placed on a probationary "set-back." Helis approved this recommendation. The Plaintiff's terms of probation included, in part, the requirements that the Plaintiff maintain a GPA over 2.00 and that he not fail any more courses. The terms of probation also warned the Plaintiff, again, that failure to meet those requirements may result in disenrollment. The Plaintiff accepted the terms of probation and was scheduled to return to the Academy as a member of the Class of 2019.

In December 2016, the Plaintiff returned to the academy from his probationary set-back during the second trimester of Academic Year 2016–17. The Plaintiff was initially assigned to the T/V KINGS POINTER from January 3, 2017 to February 1, 2017, which was cancelled because the Plaintiff requested leave due to a family emergency. The Plaintiff was ultimately assigned to the T/V KINGS POINTER from March 4, 2017 to March 11, 2017 to remediate Navigation Law

I (NPRJ235). His requirement to remediate Ship Structure and Stability (NPRJ225) was deferred due to the lack of availability of ships.

Navigation Law I (NPRJ235) required that the Plaintiff complete a sea project, an in-class exam, and a handwritten project. The Plaintiff failed to turn in the handwritten project, and failed Navigation Law I (NPRJ235) for the second time.

The Assistant Academic Dean again referred him to the ARB for disenrollment. The ARB recommended that he be disenrolled, and Helis concurred with this recommendation. After these events, the Academy disenrolled the Plaintiff on May 17, 2017.

## II. DISCUSSION

### A. THE LEGAL STANDARD.

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment,

the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. AS TO THE PLAINTIFF'S APA CLAIM.

The Defendants are agents under the APA, which provides that agency action is subject to judicial review when it is "final" and there is "no other adequate remedy in a court." 5 U.S.C. § 704. "[T]he Administrative Procedure Act provides that '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' unless review is precluded by statute or the complained-of decision was committed to agency discretion." *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009) (quoting 5 U.S.C. § 702).

Here, the Plaintiff challenges his disenrollment on the ground that the Academy's decision was arbitrary and capricious. The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706(2)(A). Under this standard, "the scope of review is . . . narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). The agency's decision is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 28

L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

"Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43, 103 S.Ct. 2856 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). Accordingly, an agency action is arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* at 43, 103 S.Ct. 2856.

The Plaintiff alleges that the Academy failed to properly review the record in making the decision to disenroll him. Specifically, he claims that the decisionmakers at the hearing based their findings on an incorrect recollection of (1) the number of sea days afforded to him when remediating Navigation Law I (NPRJ235) and (2) the amount of time afforded to complete his projects for the class. The Court disagrees.

As a preliminary matter, the Plaintiff bases his objections almost entirely on an affidavit and deposition transcripts produced for this litigation. This evidence is irrelevant to the Court's assessment of his APA claim. "[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The entire case on review is a question of law." *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *accord Brezler v. Mills*, 220 F. Supp. 3d 303, 321 (E.D.N.Y. 2016). Thus, the only question before the Court is whether the administrative record adequately supports the Academy's decision, not whether it was proper in

light of all the evidence unearthed during discovery. *See Brodsky v. U.S. Nuclear Regulatory Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013) ("[T]he APA contemplates that, in deciding a challenge to agency action, a court will review the administrative record to ensure that the agency [did not act arbitrarily or capriciously]"); *Miezgiel v. Holder*, 33 F. Supp. 3d 184, 189 (E.D.N.Y. 2014) ("Whether an agency action is arbitrary and capricious is a legal question to be resolved on the basis of agency records in existence at the time of the action[.] Plaintiffs bear the burden of showing, by citation to evidence in the administrative record, that an agency's actions are arbitrary and capricious.").

The Court finds that there exists a rational connection between the facts in the administrative record and the Academy's decision. The Academy disenrolled the Plaintiff after he failed a class for the second time, AR 128, violating the terms of his probation. AR 131. During his tenure at the Academy, the Plaintiff was referred for disenrollment four times due to his academic deficiencies; placed on academic probation on two separate occasions; and a received an additional probationary "set-back" in his class year. AR 131, 133, 134, 137. In sum, the Plaintiff was academically deficient for years and the Academy afforded him numerous opportunities to correct his academic performance prior to his disenrollment. The Plaintiff's continued failure to meet the academic standards set by the Academy was more than a sufficient basis for its decision.

The Plaintiff's contention that the Academy erred due to a miscalculation of the number of sea days provided to complete his projects is misguided. The Plaintiff cites nothing in the record illustrating that the number of sea days was material to the Academy's determination. Indeed, the only documents in the record articulating the rationale for the Plaintiff's disenrollment indicate that he failed the class because he did not submit Part 1 of the writing project which "only required re-writing the Rules of the Road." AR 125, 128.

8

As for the Plaintiff's argument about the amount of time afforded to complete his projects, he relies on Helis's written comment that the Plaintiff: "Failed to complete 1 sea project in spite of 3 [months] to do so." AR 128. The Plaintiff argues that this characterization is false, because he was not assigned to the T/S KINGS POINTER until March 1, and was instructed to complete the entire project during his seven-day sea duty. Although Helis's comment uses the phrase "sea project," immediately above that comment, the comments supporting DeJean's recommendation states "Part 1 of Proj Non- Submit." AR 128. Consequently, it is clear that Helis was referring to the Plaintiff's failure to submit his written project, which he could have completed on campus without being assigned to a vessel.

The Plaintiff also argues that the Academy acted arbitrarily and capriciously by departing from its own regulations and procedures. It is unclear what procedures, if any, he believes the Academy failed to follow when deciding whether to disenroll him, as he repeats the conclusory phrase without further explanation throughout his brief. It appears that his complaint stems from the Academy's failure to afford him a hearing before the executive board and an appeal to the Maritime administrator. Those procedures are for disciplinary proceedings. The administrative record conclusively demonstrates he was dismissed for academic reasons, so that he was not entitled to that extra process.

The remainder of his complaint stems from the procedures used when the Academy levied a Class 1 alcohol infraction against him in December 2015. In his view, the discipline he suffered as a result of those proceedings "set in motion the chain of events directly leading to [his] academic problems" by depriving him of sea days necessary to complete his classes. ECF 42-3 at 23.

This challenge is unavailing. Putting aside the substance of the Plaintiff's argument, which the Court will address in the context of the alleged constitutional violations, the remedy the

Plaintiff seeks is setting aside his disenrollment. *See* ECF 1 ¶¶ 78–81. The Plaintiff's disciplinary infraction in December 2015 was a separate decision, invoking a different process. Even if the Plaintiff was correct that the Academy gave him insufficient process at that time, it would not entitle him to the remedy he seeks here. In order to overturn the Academy's decision with regard to his disenrollment, the Plaintiff must demonstrate something defective about that particular decision. *See Alzokari v. Pompeo*, 394 F. Supp. 3d 250, 255 (E.D.N.Y. 2019) (confining its review to whether the "decision at issue" was arbitrary and capricious); *Ru Jun Zhang v. Lynch*, No. 16-cv-4889, 2018 WL 1157756, at *6 (E.D.N.Y. Mar. 1, 2018) ("The standard of review under § 706(2)(a) is narrow and particularly deferential. The reviewing court must determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made.").

The Academy disenrolled the Plaintiff for failing a class in violation of the terms of his probation. Vacating his disciplinary infraction would not remedy the inadequacy of his academic performance. It is no answer to say that the indirect consequences of his disciplinary infraction resulted in that outcome, because the disenrollment decision stands on its own. *See Constitution Pipeline Co. v. New York State Dep't of Envtl. Conservation*, 868 F.3d 87, 102 (2d Cir. 2017) ("If there is sufficient evidence in the record to provide rational support for the choice made by the agency, [the court] must uphold its decision.").

To the extent the Plaintiff's claim that the Academy departed from its regulations and procedures by failing to give him the amount of sea days required to complete each class, the evidence he cites does not demonstrate the existence of a set in stone requirement for sea days per class.

First, he cites Helis's testimony that the average amount of time afforded to a midshipman to complete sea projects is 90-to-100 days. However, Helis also explicitly testified that the amount of sea days "var[ies] from midshipman to midshipman," meaning that the average he articulated hardly shows that the 78 days afforded to the Plaintiff was a departure from normal procedure. ECF 42-1, Ex. K, Helis Dep. Tr. at 22:9–10.

Second, he cites the Department of Shipboard Training Sea Year Guide, which allegedly required that he receive "A MINIMUM of 120 Sea Days First Sailing Period" and 14 sea days to complete his remediation of Navigation Law I (NPRJ235). ECF 46-5 at 10, 109. However, the Sea Year Guide is not a regulation intending to establish binding procedures for the Academy. It is a "reference" or "textbook" designed to "ease some of the stress" faced by midshipmen. *Id.* at 10. The document explicitly states that many of the things communicated are "missions," *i.e.* goals, of the department and midshipmen and subject to fluctuation. *Id.*

Of importance, the record demonstrates that the Plaintiff's disciplinary infraction did not play a role in the Academy's decision. The Academy chose continued academic probation as the sanction for the Plaintiff's poor academic performance, even though disenrollment was an option, on two separate occasions after the Plaintiff was disciplined for the alcohol infraction in December 2015. AR 133–34, 137. Moreover, the Academy considered and rejected the Plaintiff's claim that his academic failures were brought on by the supposed limitation on sea days caused by his discipline. AR 128. Indeed, the Plaintiff failed the class that caused his disenrollment due to his non-submission of a writing assignment, not anything relating to his loss of sea time due to the alcohol incident. AR 124–25.

As a result, it cannot be said that the Academy "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an

11

explanation for its decision that runs counter to the evidence before the agency, or issued a decision that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alzokari*, 394 F. Supp. 3d at 254–55.

Therefore, the Court finds that the Plaintiff's APA claim fails as a matter of law.

## C. AS TO THE PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). The Defendants do not dispute that the Plaintiff had a constitutionally protected interest in his enrollment at the Academy but argues that the Academy afforded him adequate process. The process to which the Plaintiff was entitled depends on whether his dismissal was disciplinary or academic in nature. The Defendants argue that the disenrollment was academic, while the Plaintiff contends that it was disciplinary. The Court finds, first, that the Academy disenrolled the Plaintiff for academic reasons and, second, that the process it provided him comported with the mandates of procedural due process.

### 1.  As to Whether the Plaintiff's Disenrollment Was Disciplinary or Academic.

In *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), the Supreme Court distinguished between dismissals from educational institutions on the basis of an "academic" rationale and those that may be properly characterized as "disciplinary," noting that the former "call[ ] for far less stringent procedural requirements[.]" *Id.* at 86, 89–90, 98 S.Ct. 948. The Court emphasized the significant difference between "the failure of a student to meet academic standards and the violation by a student of valid rules of conduct." *Id.* at 86. The Court determined that action based on disciplinary reasons resembles

traditional judicial and administrative factfinding so that a hearing provides "a meaningful hedge against erroneous action." *Id.* at 89, 98 S.Ct. 948. Conversely, the decision that a student has not met a school's academic standards is more subjective and based on an evaluation of cumulative information and therefore not easily adapted to judicial procedure or decision-making. *Id.* at 89–90, 98 S.Ct. 948. The Supreme Court thus held that a medical student's dismissal from medical school for poor clinical performance—based in part on unsatisfactory personal hygiene, interactions with patients, and attendance—should be considered academic, so that the medical student was not entitled to the full procedural protections required in a disciplinary hearing. *Id.* at 91 n.6.

There appears to be no Second Circuit decision applying *Horowitz* to a dispute over whether a dismissal from an academic institution was academic or disciplinary. However, another district court in this circuit found that "courts have considered a dismissal to be 'academic' where the rationale has to do with the student's deficiency in the skills necessary in school or in the career for which the school is training him, including lack of professionalism." *Wolff v. State Univ. of New York Coll. at Cortland*, No. 13-cv-1397, 2016 WL 9022503, at *17 (N.D.N.Y. Feb. 5, 2016). Courts in other circuits apply the same interpretation of *Horowitz. See Allahverdi v. Regents of Univ. of N.M.*, 05-cv-277, 2006 WL 1313807, at *12–13 (D.N.M. Apr. 25, 2006) (reviewing cases from First, Sixth, and Seventh Circuits, and concluding that an academic dismissal will be found "where a student's scholarship or conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on an at least partially subjective appraisal of those qualities").

In the Court's view, the conclusion that the Plaintiff's dismissal was academic is inescapable. The Plaintiff received a failing grade in his remediation of Navigation Law I

13

(NPRJ235)—his fourth failed class at the Academy—violating the terms of his academic probation. AR 125, 131. The notice he received regarding his referral to the ARB explicitly stated that the recommendation was "due to a second failure" of the class. AR 313. The comments from Helis and DeJean on the document formalizing the Plaintiff's disenrollment explicitly discuss his failure of the class. AR 128. Contemporaneous documents regarding the process indicate the Plaintiff was "disenrolled after an academic appeal." AR 330. The deposition testimony of Helis and DeJean similarly explain that they voted to disenroll the Plaintiff due to his academic failures. ECF 42-1, Ex. K, Helis Dep. Tr. at 18:2–19:20, 35:17–36:9, 55:9–12, Ex. N, DeJean Dep. Tr. at 20:4–19.

The Plaintiff does not meaningfully dispute any of these facts. Rather, he contends his disenrollment was disciplinary because he failed the class as a result of losing extensive time at sea as a consequence of the punishment for his December 2015 alcohol infraction. The Plaintiff's argument is erroneous.

First, the Plaintiff claims that he failed Navigation Law I (NPRJ235) and Ship Structure and Stability (NPRJ225) during the second trimester of his sophomore year because he only received 36 sea days. However, the Plaintiff had a total of 78 days at sea to work on his sea year assignments. AR 334–41. He was employed for 24 days on the M/V CAPE RISE, 14 days on the MAERSK KENTUCKY, 4 days on the T/V KINGS POINTER, and 36 days on the M/V MARJORIE C. ECF 46-1 ¶¶ 6, 7, 11–13. The Plaintiff's calculation of sea days rests on the incorrect assumption that he had no time to work on his sea projects before he was disciplined. Moreover, it overlooks the fact that he lost the additional sea days because he was fired from the MAERSK KENTUCKY, a merchant vessel owned and operated by a third-party, not because of a punishment by the Academy. ECF 42-1 at 218–19.

14

Regardless, the Plaintiff was not disenrolled for failing those classes. He was placed on academic probation and given a one-year "set-back" after failing those classes, as well as an additional Navigation Law (NAUT230) class, which was entirely on campus. The academy only disenrolled him after he failed his remediation of Navigation Law I (NPRJ235) a year later.

Second, the Plaintiff blames his failed remediation of Navigation Law I (NPRJ235) on being only provided a week to complete the class. This is incorrect. The Academy assigned the Plaintiff to the T/V KINGS POINTER for 8 days with approximately 12 other midshipmen who were remediating the same project. ECF 46-1 ¶ 24. The trip was staffed with an employee of the Academy and midshipmen worked 12 hours per day to help pass the course. *Id.* It has been the practice of the Academy to remediate Navigation Law I (NPRJ235) in this manner for over ten years. *Id.* Consequently, it is apparent that the amount of time the Plaintiff was given to complete the class was unremarkable when compared to midshipmen in similar situations, and was not hampered by any disciplinary action by the Academy.

Further, the Plaintiff returned to campus in December 2016 and Navigation Law I (NPRJ235) was the only class he had to complete that semester. ECF 46-1 ¶ 20. He failed that class due to his non-submission of the handwritten portion of his sea project, which involved copying portions of the Code of Federal Regulations ("CFR") and did not have to be completed at sea. AR 22; ECF 42-1, Ex. D, Hearn Dep. Tr. at 98:4–99:14. The Plaintiff's failure to turn in the project was his own fault, not the consequence of any disciplinary action of the Academy.

In sum, the facts here overwhelmingly demonstrate that the Academy dismissed the Plaintiff based on its assessment that he lacked the skills necessary to be a licensed merchant marine officer. The basis for its decision contained none of the traditional judicial and administrative factfinding associated with a disciplinary hearing. To the extent that that the

Plaintiff lost sea days due to his prior disciplinary infraction, those limitations were merely incidental consequences of his own behavior. As a result, the cases relied on by the Plaintiff to allege that his dismissal was for academic reasons are unavailing.

In *Smith v. School City of Hobart*, 811 F. Supp. 391 (N.D. Ind. 1993), the court found unconstitutional a school policy that reduced a student's final grade by a particular percentage for each day the student was suspended, and, thus, unrelated to the schoolwork that was to be completed during the student's actual suspension. *Id.* at 399. Unlike this case, the Academy did not academically sanction the Plaintiff or reduce his grades as a result of his alcohol infraction, he merely lost sea days, the functional equivalent of class time, as a result of his misconduct. There is no evidence that this occurred as a result of an intentional decision by the Academy to punish the Plaintiff academically.

The court in *John S. v. Ozark R-VI School District*, No. 11-cv-3031, 2012 WL 176226 (W.D. Mo. Jan. 18, 2012) held that the ruling in *Smith* was inapplicable to a high school policy that permitted students on suspension to complete their academic work to earn 50% credit during the term of an out of school suspension. *Id.* at *1–2. In addition to commenting that the case was not binding on the court, it found the school policy in *Smith* distinguishable because "the student's final grade was reduced a particular percentage for each day the student was suspended, and, thus, unrelated to the school work that was to be completed during the student's actual suspension." *Id.* Thus, this case supports the opposite of the Plaintiff's argument.

In more analogous cases, courts have held that dismissals of students for failing grades remain academic notwithstanding the fact that the student may have had overlapping disciplinary issues.

In *Monroe v. Arkansas State University*, 495 F.3d 591 (8th Cir. 2007), a university dismissed a student from its nurse anesthesia program after he took a medical leave of absence for a drug addiction and received an "incomplete" grade in his clinical course. As part of the terms of his leave of absence, the school advised the student that his "incomplete" would turn into a failing grade if the course was not completed in a year, resulting in his dismissal from the program. The Eighth Circuit found the plaintiff's dismissal academic even though the students conduct "might have permitted a disciplinary dismissal" because it was "undisputed that the University dismissed [him] for failure to complete his course work, not his drug use." *Id.* at 595.

In *Wheeler v. Miller*, 168 F.3d 241 (5th Cir. 1999), a university dismissed a graduate student from a doctoral program, and that student claimed that he was improperly dismissed as a result of cheating allegations. The student was placed on a remedial plan after two "C" grades, and then placed on a second remedial plan after receiving two more "Cs" and failing two oral comprehensive examinations. After the plaintiff failed to enroll in a course specified in the second remediation plan, he was formally dismissed from the program. The Fifth Circuit found "[t]he decision to dismiss [the plaintiff] was undisputably the result of his failure to comply with the course requirements of the second remedial plan." *Id.* at 248. Of importance to the court, the Plaintiff offered "no direct summary judgment proof that allegations of cheating had anything whatever to do with" his failure of the examinations, and put forward no evidence to defeat the "unequivocal sworn statements" from his professors that their evaluation was a "good faith exercise of their professional judgment regarding [his] academic performance." *Id.*

Granted, these cases all differ from the facts here in that, unlike the plaintiff, the students in those cases never actually received infractions for their alleged misbehavior. However, they share a much more significant similarity—the defending educational institutions put forward

17

uncontroverted evidence of the plaintiff's academic deficiencies. Therefore, they stand for the principle that when a school disenrolls a student for receiving a failing grade, that decision should be considered an academic disenrollment absent evidence that disciplinary considerations influenced the school's decision.

The Plaintiff failed to adduce such evidence in this case. The only evidence he cites are the inclusion of his alcohol infraction on a "blue sheet" given to the Academy decisionmakers during his review process and his own deposition testimony saying that DeJean and Helis asked him questions about the infraction. Regarding the former, the "blue sheet" merely includes background on the midshipmen referred to the ARB, there is no indication that the alcohol infraction mentioned on the document was before the ARB for review. AR 125. As for the latter, the Plaintiff's testimony elaborated that he was the one that initially brought up his alcohol infraction, not DeJean and Helis, and he could not remember the content of the questions they asked. ECF 42-1, Ex. D., Hearn Dep Tr. at 58:7–15.

In light of the aforementioned evidence that the Academy's decision was confined to the Plaintiff's substandard academic performance, the mere mention of his alcohol infraction cannot transform a clearly academic-oriented decision into a disciplinary one. Tellingly, the Plaintiff faults the Academy for failing to take into account the consequences of his alcohol infraction when making its decision on disenrollment. ECF 42-3 at 20. He cannot simultaneously argue that his disenrollment was disciplinary in nature while claiming that the Academy erred by *not* considering his disciplinary infraction.

Therefore, the Court finds that the Plaintiff's disenrollment was academic, rather than disciplinary, in nature.

**2. As to the Process Due to the Plaintiff.**

Although the Court has determined that the Plaintiff's disenrollment was academic, rather than disciplinary, in nature, the Court will assess the sufficiency of the process afforded to him for both his alcohol infraction and his academic disenrollment. The Court finds that the Academy complied with procedural due process in both situations.

**a. As to the Plaintiff's Alcohol Infraction.**

Before receiving a disciplinary punishment, a student in a service academy must be "given a fair hearing at which he is apprised of the charges against him and permitted a defense." *Wasson v. Trowbridge*, 382 F.2d 807, 812 (2d Cir. 1967); *Andrews v. Knowlton*, 509 F.2d 898, 905 (2d Cir. 1975) ("[B]efore a cadet can properly be dismissed or separated from his service academy, he must have a hearing. be apprised of the specific charges against him, and be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence. A military proceeding conducted within these bounds of procedural due process would be proper and immune from constitutional infirmity."); *Doe v. United States Merch. Marine Acad.*, 307 F. Supp. 3d 121, 156 (E.D.N.Y. 2018) ("As required, plaintiff was given a fair hearing, notice of the charges against him, and the opportunity to defend himself.").

The Plaintiff undoubtedly received such a process. After Maersk fired the Plaintiff for attempting to board the MAERSK KENTUCKY, the Academy investigated; held a hearing in which the Plaintiff attended; and gave him the opportunity to submit a written statement. The Academy cited him for a Class 1 violation because his intoxication was confirmed by blood alcohol tests, which violated the policies of the Maersk line and the alcohol regulations in the Academy's Academic Handbook.

19

The Plaintiff identifies several alleged flaws in the disciplinary proceedings. For the most part, they concern the claim that the Academy failed to comply with its regulations and procedures when disciplining him. In light of the process offered to the Plaintiff, these complaints do not amount to a constitutional violation. *See Rios v. Town of Huntinston Hous. Auth.*, 853F. Supp. 2d 330, 344–345 (E.D.N.Y. 2012) (Spatt, J.) ("The Second Circuit has endorsed the view that '[w]hen the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.'" (quoting *McDarby v. Dinkins*, 907 F .2d 1334, 1337–38 (2d Cir. 1990)). Moreover, the Plaintiff's arguments are inconsistent with the available evidence.

First, the Plaintiff claims that he was never informed that the Maersk vessel had a zero tolerance policy for alcohol. However, the Academy's Academic Handbook required him to familiarize himself with Maersk's alcohol policies, AR 289, he attended lectures giving him the same instruction, ECF 42-1 at 198, and received a dispatch package from Maersk clearly articulating that he could be terminated if he was under the influence of alcohol on the vessel, *id.* at 174–91.

Second, the Plaintiff cites e-mails and other correspondence from Maersk employees and the investigating officer recommending that the Plaintiff not receive a Class 1 violation. These documents supposedly establish that the Plaintiff "did nothing wrong." ECF 42-3 at 7. It is unclear what argument the Plaintiff is attempting to advance by citing these documents. The Court surmises that he is asserting that his conduct failed to meet the criteria for a Class 1 violation under Regulation 704 of the Midshipman Regulations, which states the infraction is only applicable for a "grave and/or deliberate violations of the standards of conduct." AR 244. This argument is belied by the Midshipman Regulations, which classify alcohol offenses as serious, Class 1 violations. *See*

AR 184–307; Midshipman Regulations, sections 204.a, 1105.c.3, 1105.c.8, 1105.c.10, 1109.2. It is also contradicted by the fact that Maersk terminated the Plaintiff and banished him from its vessels. ECF 42-1 at 198, 217.

Third, the Plaintiff contends he never received notice of formal Class 1 charges in violation of Regulation 803(d). He cites no evidence supporting that conclusion. Moreover, he participated in the investigation; attended the hearing; and submitted a written statement. ECF 46-3 ¶ 5; ECF 46-6 at 1–2.

Fourth, the Plaintiff argues he was denied a right to appeal his decision to the Superintended in violation of Regulation 803(g). However, the Academy denied the Plaintiff's appeal because he failed to submit it in a timely manner, *i.e.*, within 24 hours of receiving the recommendation of the Commandant. ECF 42-1, Ex. K., Helis Dep. Tr. at 68:3–15, 88:2–6. Even if that policy was not codified in the regulations themselves, it is undisputed that the Academy informed the Plaintiff of the requirement. What is more, the Plaintiff "had no constitutional right to review or appeal after the disciplinary hearing which satisfied the essential requirements of due process." *Winnick v. Manning*, 460 F.2d 545, 549 n.5 (2d Cir. 1972).

Therefore, the Court finds that the Plaintiff's procedural due process claim as to his alcohol infraction fails as a matter of law.

### b. As to the Plaintiff's Disenrollment.

"In the context of an academic dismissal a student is afforded the procedural process required by the [Constitution] where (1) the school has 'fully informed the student of the faculty's dissatisfaction with the student's progress and the danger that this posed to timely graduation and continued enrollment,' and (2) 'the ultimate decision to dismiss the student was careful and

deliberate.'" *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 191 (2d Cir. 2015) (quoting *Horowitz*, 435 U.S. at 85, 98 S.Ct. 948).

"This standard reflects the need for 'far less stringent procedural requirements,' than those called for in disciplinary dismissal." *Id.* (quoting *Horowitz*, 435 U.S. at 86, 98 S.Ct. 948). "Given the 'more subjective and evaluative' nature of the judgment school officials exercise in deciding whether to terminate a student for academic cause, such dismissals are 'not readily adapted to the procedural tools of judicial or administrative decisionmaking.'" *Id.* (quoting *Horowitz*, 435 U.S. at 90, 98 S.Ct. 948). "A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum." *Horowitz*, 435 U.S. at 85 n.2, 98 S.Ct. 948.

Here, the Academy gave the Plaintiff more than adequate procedural due process. The Plaintiff received two separate academic probations, as well as a "set-back" in class year, after failing five separate courses over a two year period. AR 130–31, 133, 135–138, 311–17. In the terms of his second academic probation, the Plaintiff agreed that failure to maintain a 2.00 GPA and failing any additional courses may result in disenrollment. AR 131. After the Plaintiff failed his remediation of Navigation Law I (NPRJ235), he received a letter from the academic dean Diane Taha on April 24, 2017 notifying him that he was referred to the ARB for disenrollment. AR 333. During his ARB review, the Plaintiff was given the opportunity to make a statement and appeal the ARB's determination. AR 327.

Accordingly, it is apparent that the Plaintiff received both the requisite notice of potential dismissal and a careful and deliberate evaluation by the Academy. Moreover, the Court has already addressed the Plaintiff's claim that the Academy failed to comply with its own regulations. *See supra* II.B, II.C.2.a. Due process required no additional procedures. *See Dean*, 804 F.3d at 193

22

("Nor was [plaintiff] entitled to additional process after the June 7, 2007 letter announcing that no additional leave would be granted. . . . While Defendants might well have reconsidered whether to dismiss [plaintiff] after he failed to sit for the Step 1 exam by the deadline, he was entitled only to a decision rendered with due care and deliberation, not to a particular process of continued notice and consideration."); *Wolff v. State Univ. of New York*, 678 F. App'x 4, 6 (2d Cir. 2017) ("The process that Wolff received met that standard. He received notice of the prospective dismissal. He had an opportunity to state his case in a letter and an in-person meeting, and then in a formal appeal to the Teacher Education Board of Appeals.").

The Plaintiff also argues that he was improperly disenrolled because he did not actually fail Navigation Law I (NPRJ235). The Plaintiff is incorrect. The Plaintiff's Navigation Law I (NPRJ235) grade consisted of three parts: Part 1, a handwritten project worth 20% of his grade; Part 2, an exam worth 40% of his grade; and Part 3, a sea project worth 40% of his grade. The record reflects that he received 0% on Part 1, 78% on Part 2, and 53.3% on Part 3. AR 124–25. After taking into account the relative weight of each section, these grades result in a failing overall score in the class of 52.5%.

First, the Plaintiff disagrees that he received a 53.3% on Part 3. As support, he cites notations in the record noting that he lost 5 points each on questions 2, 8, 9, and 10. AR 31, 51, 54, 58. Thus, he believes that he should have received an 80% for that section. However, those notations are not exclusive – *i.e.*, they only show demerits for certain drawings in Part 3, but do not preclude that the Plaintiff may have gotten other questions wrong. Accordingly, they are not a sufficient basis for departing from the grades reflected on his academic transcript, which were confirmed by the affidavits of members of the Academy. *See* ECF 46-2 ¶ 17.

Second, the Plaintiff argues that the grading matrix for the class actually provided for a 10%, 45%, 45% distribution across Parts 1, 2 and 3 respectively. However, the Plaintiff bases this argument on the grading matrix for when he initially failed the class in 2016. ECF 42-1 at 205. It is undisputed that the matrix for the class resulted in his failure provided for a 20%, 40%, 40% split. AR 1, 20. Moreover, the record also illustrates that the Plaintiff would have failed under the alternative grading matrix he proposed, as his cumulative score would have been a failing grade of 59.1%. ECF 46-2 ¶ 19.

Regardless, the Plaintiff's complaints about his grades stray from a challenge to the procedures afforded to him to a dispute over the substantive merit of his disenrollment. The grading of exams is a quintessentially academic determination invoking the Academy's subjective assessment of the Plaintiff's capabilities as a midshipman, one which they are eminently more qualified to undertake than the Court. *See Keles v. New York Univ.*, No. 91-cv-7457, 1994 WL 119525, at *6 (S.D.N.Y. Apr. 6, 1994) ("Generally, however, determinations regarding a student's academic performance are entitled to great deference and are rarely found to be arbitrary, as such determinations require the special expertise of educators and play an important role in preserving the integrity of the credentials conferred by the educational institution."). "Few decisions properly rest so exclusively within the discretion of the appropriate government officials [as] the selection, training, discipline and dismissal of the future officers of the military and Merchant Marine." *Wasson*, 382 F.2d at 812.

Therefore, the Court finds that the Plaintiff's procedural due process claim as to his disenrollment fails as a matter of law.

**D. AS TO THE PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM.**

To establish a substantive due process claim based on an academic decision, a plaintiff must show such "a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). For such decisions, "educational institutions have the right to receive summary judgment unless there is evidence . . . that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Clements v. Nassau Cty.*, 835 F.2d 1000, 1004 (2d Cir. 1987).

The only potential bases for a substantive due process violation alleged by the Plaintiff are the procedural violations already discussed and his assertion that Helis demonstrated animus towards him during the review process. The latter accusation consists of a one sentence conclusory assertion. *See* ECF 42-3 at 23 ("To the contrary, Superintendent Helis exhibited personal animus towards Plaintiff and was clearly prejudiced against him. See Rule 56.1 ¶¶ 128-37."). A review of the evidence cited by the Plaintiff reveals that this assertion is apparently baseless. He relies entirely on Helis's disagreement that his lack of sea days constituted a mitigating factor that should weigh against disenrollment. The Plaintiff describes no overtly disparaging or hostile remarks by Helis. Moreover, Helis's alleged animosity towards the Plaintiff is belied by the fact that Helis on three previous occasions, including two occasions after his alcohol infraction, concurred with recommendations to place the Plaintiff on academic probation instead of disenrolling him. *See* AR 68, 78–81, 84, 115–19, 125, 129–31, 134–39, 311–12, 314–16.

The Plaintiff's claims thus "fall far short of the standard for substantive due process claims." *Doe*, 307 F. Supp. 3d at 157 (describing substantive due process claim where the

25

allegations "pertaining to defendants' motives—that they were motivated by ill will and political objectives—[were] unsupported by any concrete factual allegations"); *Cassidy v. United States*, No. 17-cv-4187, 2018 WL 6088146, at *14 (E.D.N.Y. Nov. 20, 2018) ("Plaintiff's conclusory allegations, are either rooted in the alleged procedural infirmities set forth above with respect to his procedural due process claim, or are unsupported by any factual allegations and, thus, fall far short of the standard for substantive due process claims.).

Even if the Academy's decision to disenroll the Plaintiff was improper, actions that are merely "incorrect" or "ill-advised" are insufficient to state a substantive due process claim. *See Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir. 1999) ("To succeed on their substantive due process claim, Plaintiffs–Appellants must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised."). Therefore, the Court finds the Plaintiff's substantive due process claim fails as a matter of law.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendants' motion for summary judgment dismissing the Complaint in its entirety and denies the Plaintiff's motion. The Court dismisses the Plaintiff's claims with prejudice. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:
Dated: Central Islip, New York
March 31, 2020

/s/Arthur D. Spatt
_____
ARTHUR D. SPATT
United States District Judge

26